IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMILA H.,[1]                                                    Case No. 1:22-cv-01520-SB

              Plaintiff,                                **OPINION AND ORDER**

       v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Tamila H. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act. The Court has jurisdiction over this matter pursuant

to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have consented to the jurisdiction of a

magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court

affirms the Commissioner's decision because it is free of harmful legal error and supported by

substantial evidence.

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I. PLAINTIFF'S APPLICATION

Plaintiff was born in April 1958, making her sixty-one years old on January 21, 2020, the day she protectively filed her SSI application.[2] (Tr. 15, 77, 87.) Plaintiff is a high school graduate

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 1:12-cv-00771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted). As a result, the ALJ considered whether Plaintiff was disabled as of January 21, 2020, the day she protectively filed her SSI application. (*See* Tr. 15-22, determining that Plaintiff has not been disabled "since January 21, 2020, the date the application was filed").

who has past relevant work experience as a claims clerk. (*Id.* at 22, 95, 257, 37-40, 52, 71.) In her application, Plaintiff alleges disability due to diabetes, peripheral neuropathy, arthritis, degenerative disc disease, hammer toes, high blood pressure, and carpal tunnel syndrome. (*Id.* at 40-48, 289.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on March 12, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 15.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held before an ALJ on September 21, 2021. (*Id.* at 30-57.) On November 3, 2021, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 15-22.) On August 9, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-22.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 21, 2020, the day she protectively filed her SSI application. (*Id.* at 15, 18.) At step two, the ALJ found that Plaintiff suffers from the following severe, medically determinable impairments: "[D]iabetic peripheral neuropathy; status-post spinal cord stimulator placement; thoracolumbar spondylosis; bilateral hammertoes; mild bilateral knee degenerative joint disease; and morbid obesity[.]" (*Id.* at 18.) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.*)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to these limitations: (1) Plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and (2) Plaintiff can never climb ladders, ropes, or scaffolds. (*Id.* at 19.) At step four, the ALJ found that Plaintiff was not disabled because she could perform her past work as a claims clerk "as actually and generally performed." (*Id.* at 22.)

**DISCUSSION**

In this appeal, Plaintiff argues that the ALJ erred in two principal ways. First, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. (Pl.'s Opening Br. ("Pl.'s Br.") at 19, ECF No. 18; Pl.'s Reply Br. ("Pl.'s Reply") at 5, ECF No. 21.) Second, Plaintiff argues that substantial evidence does not support the ALJ's explanation for discounting the opinion of Plaintiff's nurse practitioner, Dea Collins ("Collins"). (Pl.'s Br. at 11.) As explained below, the Court concludes that the ALJ's decision is free of harmful legal error and supported by substantial evidence, and therefore affirms the Commissioner's decision.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the

symptoms alleged. (*See* Tr. 20, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

### 1.    Improvement and Effective Treatment

The ALJ appropriately discounted Plaintiff's testimony based on her improvement and effective treatment.

It is well settled that an ALJ may discount a claimant's testimony based on evidence that her symptoms improved with treatment or were well controlled with medication. For example, in *Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020), the Ninth Circuit held that the ALJ provided clear and convincing reasons for discounting the claimant's symptom testimony, and in doing so, noted that the ALJ appropriately found that the claimant's testimony was inconsistent with "record evidence that her kidney disease had improved, record evidence that her hypertension was under control, and record evidence that her depression [was] well controlled (when on medication regularly)." *Id.* (simplified); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (explaining that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits").

Similarly, in *Fletcher-Silvas v. Saul*, 791 F. App'x 647, 649 (9th Cir. 2019), the Ninth Circuit held that the ALJ provided clear and convincing reasons for discounting the claimant's testimony regarding her limitations. *Id.* The Ninth Circuit noted that the ALJ appropriately found that the claimant's testimony that "her left leg improved only slightly and her right leg did not really improve following her knee replacement surgeries . . . conflicted with [her] self-reports to

treatment providers and with the objective indicia of improvement in her medical record." *Id.*;
*see also Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023)
(holding that the ALJ provided clear and convincing reasons to discount the claimant's
subjective symptom testimony, including "treatment efficacy[] and longitudinal improvement");
*Walker v. Kijakazi*, No. 22-35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (holding
that substantial evidence supported that the claimant's "pain improved after treatment and
medication"); *Torres v. Saul*, 798 F. App'x 979, 981 (9th Cir. 2019) ("The [ALJ] proffered
specific, clear, and convincing reasons for discounting [claimant's] pain and limitations
testimony because the record showed that [her] conditions improved with treatment and were
less severe than alleged.").

Similar to the cases described above, the ALJ here appropriately discounted Plaintiff's
testimony based on evidence that her symptoms and limitations improved with treatment. Before
making specific findings, the ALJ made use of the following boilerplate language often included
in disability determinations: "[Plaintiff's] statements concerning the intensity, persistence and
limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other
evidence in the record for the reasons explained in this decision." (Tr. 20.) This language alone
does not meet the Ninth Circuit's specificity requirements. *See Finney v. Kijakazi*, No. 22-15143,
2022 WL 17830000, at *1 n.1 (9th Cir. Dec. 21, 2022) ("The ALJ . . . made use of boilerplate
language stating that [the plaintiff's] statements are 'not entirely consistent with the medical
evidence and other evidence in the record.' This boilerplate explanation is insufficiently
specific.") (citation omitted). The ALJ, however, did not rely solely on this boilerplate language
and instead proceeded to give specific, clear, and convincing reasons for discounting Plaintiff's
symptom testimony.

PAGE 7 – OPINION AND ORDER

For example, after summarizing Plaintiff's testimony and certain medical imaging and examination results, the ALJ addressed Plaintiff's treatment history. (*See* Tr. 20-21.) The ALJ explained that Plaintiff achieved significant improvement in her symptoms, which conflicted with her allegations: "[Plaintiff] has tried multiple treatment modalities including a spinal cord stimulator, physical therapy, Basaglar and Admelog (insulin), antibiotics, anti-inflammatories, nerve relaxers, muscle relaxers, as well as over the counter and prescription pain medication with significant improvement in [Plaintiff's] symptoms. . . . The above discussion . . . shows [Plaintiff's] allegations are not consistent with the medical record." (*Id.* at 21, citing Tr. 309, 352-53, 393-403, 407-26, 451-56, 474, 477, 673, 675-76, 678, 705-06, 786, 789, 791, 793, 812, 814.)

The ALJ cited numerous examples in support of his decision to discount Plaintiff's testimony based on evidence of improvement and effective treatment. The examples the ALJ cited, many of which are described below, demonstrate that the ALJ's interpretation of the record was reasonable:

- January 16, 2019: Plaintiff complained of significant and progressive bilateral hip pain and lower extremity weakness and acknowledged that she had "not performed her initially dispensed [home exercise program] due to fear avoidance, flu symptoms, and reported lack of motivation." (*Id.* at 423.)

- January 24, 2019: Plaintiff reported that she experienced "moderate joint stiffness and [delayed onset muscle soreness]" immediately after her recent physical therapy visit, she "felt really good" the next day, and "her pain levels ha[d] been lower than normal," and Plaintiff's physical therapist noted that

Plaintiff "[a]ppear[ed] to tolerate [her exercises] well again with no obvious
pain behaviors or fear avoidance." (*Id.* at 416.)

- January 29, 2019: Plaintiff's physical therapist observed that Plaintiff
  "appear[ed] to be progressing well" and exhibited "good effort with requested
  gym activities." (*Id.* at 414.)

- February 6, 2019: Plaintiff reported that she had "been very happy with her
  progress [during physical therapy,] noting decreasing hip and low back
  discomfort and slowly improving functional activity tolerances," she was
  "performing her [home exercise program] activities daily," she experienced
  "improvements in her exercise tolerance, leg strength, and ability to walk,"
  and she was "independent in appropriate [home exercise program]
  activities . . . with a high degree of confidence that she [would] continue to
  improve on an independent basis without need for further acute care [physical
  therapy]." (*Id.* at 411-12.)

- March 20, 2019: Plaintiff reported a "35+ year history of progressive
  [bilateral] knee and patellar pain stemming from multiple lateral patellar
  subluxation/dislocations" and "recent progression in her [bilateral] knee pain,
  stiffness, and weakness," and Plaintiff's physical therapist noted that Plaintiff
  had "just completed a course of skilled [physical therapy] for [bilateral] hip
  pain with good response to treatment and fair outcomes." (*Id.* at 395; *see also*
  *id.* at 393, April 30, 2019, Plaintiff's physical therapist observed that
  Plaintiff's bilateral knee pain was "more due to hip weakness" and thus he

"strongly recommended [that Plaintiff] continue doing her hip home exercises").

- April 23 and April 30, 2019: Plaintiff's physician prepared a report regarding Plaintiff's spinal cord stimulator implant procedures and noted that Plaintiff reported that she suffered from "painful diabetic neuropathy that ha[d] failed conservative treatment," she experienced "greater than 70% relief" after she had "her trial leads as a stage implant placed," she was "able to back down on her gabapentin dose," she rated her pain "as almost a 0 out of 10," and her pain worsens "for unknown reasons and [is] better with ice and medications." (*Id.* at 451-56.)

- October 2, 2019: Plaintiff presented for "her 6 month follow-up visit after her spinal cord [stimulator] implant," Plaintiff reported "greater than 80% improvement in her symptoms" and that her "pain on the left [was] a 0.2 and on the right [was] a 0.3 out of 10," and Plaintiff's provider explained that Plaintiff had achieved "almost complete resolution" of her "painful diabetic neuropathy affecting her feet," Plaintiff was "doing well," there were "signs of improvement of sensation [in Plaintiff's] feet," and Plaintiff's "sensation ha[d] almost completely normalized." (*Id.* at 678.)

- January 21, 2020: Plaintiff protectively filed her application for SSI. (*Id.* at 15.)

- May 19, 2020: Plaintiff presented for "her 12 month follow-up visit" and reported that she "continue[d] to receive about 90% relief of her pain," her "pain was a 0.3 on the left and a 0.3 on the right," her "symptoms [were]

much improved," and she "also noticed improvement in her sensation of her feet." (*Id.* at 675-76, 705-06.)

- July 17, 2020: Plaintiff presented for a follow-up with Collins regarding her "chronic pain issues," i.e., "low back pain, [right] hip pain, [and pain in] both knees," and reported that she had been "sitting in a chair [due to] pain," ice provided "brief improvement," ibuprofen provided "min[imal] improvement [but] takes the edge off," she had "previously taken Percocet which was more effective," and she wanted "something stronger for [her] pain pending [a] podiatry eval[uation] for [her] severe hammertoes which [was] contributing to [her] knee/hip pain and low back pain [due to her] favoring [of the] affected foot." (*Id.* at 846.)

- August 4, 2020: Plaintiff completed a disability-related "pain and symptoms" questionnaire for the Commissioner and reported that "with [her] back pain, nothing helps except getting off [her] feet" and standing, walking, and sitting for extended periods makes her pain worse. (*Id.* at 309; *see also id.* at 310-17, August 4, 2020, noting that Plaintiff completed a function report and stated that she cannot "walk or stand for more than about [ten] min[utes] before pain becomes unbearable").

- October 13, 2020: Plaintiff presented for "her 18 month follow-up for her spinal cord stimulator implant," reported that she "continue[d] to do well with greater than 80% relief of her pain," and "rat[ed] her pain as a 2 on the numerical rating scale." (*Id.* at 673.)

- February 2, 2021: Plaintiff reported that she had "no more pain" after taking an antibiotic to treat "a one-week history of a large blister on the lateral aspect of the left heel." (*Id.* at 786, 789.)

Given the record evidence upon which the ALJ relied, the Court concludes that substantial evidence supports the ALJ's discounting of Plaintiff's symptom testimony based on evidence of improvement and effective treatment. *See generally Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("[T]he threshold for [substantial] evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means— and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Biestek v. Berryhill*, 587 U.S. ---- , 139 S. Ct. 1148, 1154 (2019))).

Plaintiff does not specifically challenge the ALJ's discounting of her testimony based on evidence of improvement and effective treatment, or appear to dispute that she waived this argument by not raising it in her opening brief. (*See* Pl.'s Br. at 16-20; *cf.* Def.'s Br. at 5-7, ECF No. 20, arguing that Plaintiff "does not even dispute some reasons the ALJ offered," such as improvement and effective treatment, and that "[b]y not disputing this reason, [Plaintiff] has waived the argument"; Pl.'s Reply at 3-6, addressing the Commissioner's waiver argument by stating that "[t]o the extent the Commissioner intended to suggest that inaccuracies can provide clear and convincing reasons, such an argument falls flat"). The Court agrees that if a claimant fails to raise a challenge in her opening brief, she waives that challenge. *See, e.g.*, *Garza v. Kijakazi*, 857 F. App'x 280, 291 (9th Cir. 2021) (explaining that the claimant "waived any challenge to the ALJ's determination that her testimony was not entirely credible and to the ALJ's evaluation of

the medical opinion evidence by failing to raise them in her opening brief") (citation omitted).

Arguably, Plaintiff challenged the ALJ's reliance on improvement and effective treatment by asserting that the ALJ "inappropriate[ly] cherry-pick[ed]" the record "while ignoring evidence favorable" to Plaintiff, and failed to "build a logical bridge between the evidence and his conclusions" regarding Plaintiff's testimony. (Pl.'s Br. at 17.) Even if the Court so construes Plaintiff's brief, the Court finds that the ALJ's reasoning was legally sufficient and Plaintiff failed adequately to address notable examples the ALJ cited in support of his discounting of Plaintiff's testimony on this ground. Plaintiff focuses on favorable evidence and effectively advocates for alternatives to the ALJ's rational interpretation of the record, and thus fails to demonstrate harmful error. *See Vazquez v. Kijakazi*, No. 22-35642, 2023 WL 5453198, at *1 (9th Cir. Aug. 24, 2023) ("[T]he ALJ's alternative interpretation . . . is at least equally rational, and the reasoning is legally sufficient."); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (simplified); *Crawford v. Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to the ALJ's findings that "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore [did] not demonstrate error").

## 2.    Conservative Treatment

In addition to Plaintiff's improvement and effective treatment, the ALJ discounted Plaintiff's testimony on the ground that "other than the spinal cord stimulator, [Plaintiff's] treatment has been very conservative, largely over the counter and prescription pain medication." (Tr. 21.) The ALJ added that Plaintiff has "not generally received the type of medical treatment

PAGE 13 – OPINION AND ORDER

one would expect for a totally disabled individual once the spinal cord stimulator [was] taken into account." (*Id.*)

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (quoting *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)). In *Smartt*, for example, the Ninth Circuit held that the ALJ "properly discounted [the claimant's] subjective pain testimony in light of [her] generally conservative treatment plan." *Id.* On appeal, the claimant argued that the ALJ erred in doing so because "her cervical spine surgery was not 'conservative treatment.'" *Id.* The Ninth Circuit agreed but nevertheless affirmed the ALJ's discounting of the claimant's symptom testimony:

> [The claimant] argues that her cervical spine surgery was not 'conservative treatment.' That is true. But while the surgery was not conservative treatment, it was an initial stabilization measure following her injury. Overall, other than the initial surgical repair, the treatment records reveal [that the claimant] received routine and conservative treatment since the alleged onset date. After [the claimant's] surgery, the ALJ cited documented evidence of conservative treatment, including physical therapy, temporary use of a neck brace and wheelchair, and ongoing pain medication. As a result of these measures, the record shows both self-reported and objective improvement. The ALJ did not err in concluding that such ongoing conservative treatment and overall improvement are inconsistent with [the claimant's] testimony as to the severity of her impairments.

*Id.* (simplified).

Similarly, in *Delgadillo v. Kijakazi*, No. 20-56211, 2022 WL 301548, at *2 (9th Cir. Feb. 1, 2022), the Ninth Circuit held that "[t]he ALJ did not err by only partially crediting [the claimant's] allegations regarding her severe limitations because he offered specific, clear, and convincing reasons for doing so and they [were] supported by substantial evidence." *Id.* In so holding, the Ninh Circuit noted that "the objective medical evidence demonstrated that [the claimant] successfully underwent surgery to address her back and leg pain," and the claimant

"received conservative treatment for her neck pain [and] medications and injections alleviated her symptoms[.]" *Id.*; *see also Matsukado v. Kijakazi*, No. 20-15727, 2021 WL 5446021, at *1 (9th Cir. Nov. 22, 2021) (noting that the claimant's "recent medical history . . . indicat[ed] conservative treatment and good progress at physical therapy," and that an ALJ may rely on a "claimant's favorable response to 'conservative treatment[,] including physical therapy,' in discrediting claim of disabling pain" (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008))).

The Commissioner argues that substantial evidence supports the ALJ's discounting of Plaintiff's testimony based on her largely conservative treatment during the relevant period. (Def.'s Br. at 8-9.) The Commissioner emphasizes that the Ninth Circuit's decision in "*Smartt* is on point," and Plaintiff did not specifically challenge the ALJ's conservative treatment finding. (*Id.*)

Responding to the Commissioner's argument, Plaintiff claims that she "cited multiple references to the need for more than conservative treatment" in her opening brief. (*See* Pl.'s Reply at 5, collecting record cites on past injuries, diagnoses, and self-reported symptoms and limitations). Plaintiff also claims that the Commissioner "depicts the [*Smartt*] holding . . . in such a way as to suggest that substantial evidence obviates the need for clear and convincing reasons," and unlike *Smartt*, the ALJ did not provided clear and convincing reasons for discounting her testimony. (*Id.*)

Plaintiff's arguments regarding the ALJ's conservative treatment finding are not persuasive. Plaintiff did not specifically challenge this finding in her opening brief and fails to demonstrate (or argue) that the treatments upon which the ALJ relied were more than routine and conservative. (*See* Pl.'s Br. at 16-20; Pl.'s Reply at 4-6; *see also* Tr. 21, showing that the ALJ

cited Plaintiff's "largely over the counter and prescription pain medication," as well as Plaintiff's physical therapy, insulin, antibiotics, anti-inflammatories, and nerve and muscle relaxers and the record evidence demonstrating "significant improvement in [Plaintiff's] symptoms"). From the Court's perspective, this case is comparable to *Smartt* and *Delgadillo*: Plaintiff successfully underwent a spinal cord stimulator implant procedure nine months before she protectively filed her application, and Plaintiff's recent medical records reflected that she largely engaged in conservative treatment and included self-reported and objective improvement. Accordingly, the ALJ did not err in discounting Plaintiff's testimony based on her conservative treatment.

### 3.    Remaining Considerations

The Commissioner argues that the ALJ appropriately discounted Plaintiff's testimony based on her reported activities, and that Plaintiff waived any challenge to such a finding by failing to raise it in her opening brief. (*See* Def.'s Br. at 7-8, citing Tr. 21 and Pl.'s Br. at 16-20; *see also* Tr. 21, finding that Plaintiff's "activities indicate a higher level of function than [she] alleged"). Plaintiff acknowledges but does not specifically address the Commissioner's argument that she waived any challenge to the ALJ's "activity level" finding. (*See* Pl.'s Reply at 6, quoting Def.'s Br. at 11.) Instead, Plaintiff simply notes that the Commissioner relies on "inaccuracies." (*Id.*)

The Court need not resolve any dispute about the ALJ's reliance on Plaintiff's reported activities because, as explained above, the ALJ provided other clear and convincing reasons for discounting Plaintiff's testimony. Nor does the Court need to resolve any dispute about the ALJ's reliance on conflicting, inconsistent, or a lack of corroborating, medical evidence (*see* Pl.'s Br. at 17-18, Def.'s Br. at 10-11), other than to note that contrary to Plaintiff's suggestion, the ALJ did not discount Plaintiff's testimony "solely on that basis." *See McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (explaining that "inconsistencies with objective medical

evidence . . . cannot provide the sole basis for an ALJ's credibility determination"); *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that "an ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason").

### 4.    Conclusion

Based on the foregoing reasons, the Court concludes that the ALJ did not commit harmful error in discounting Plaintiff's symptom testimony because the ALJ provided clear and convincing reasons for doing so. *See Jones v. Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and thus "[a]ny error in the ALJ's additional reasons for discounting [the claimant's] symptom testimony [were] harmless"); *Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence" for doing so); *see also Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (noting that an error is harmless if the ALJ "provided at least one valid reason to discount [the] testimony") (citation omitted); *Johaningmeier v. Berryhill*, No. 3:16-02027-AC, 2018 WL 385035, at *6 (D. Or. Jan. 11, 2018) (agreeing with the Commissioner that the ALJ did not commit harmful error in discounting the claimant's symptom testimony because "the ALJ provided at least one other clear and convincing reason").

## II.    MEDICAL OPINION EVIDENCE

Plaintiff also argues that substantial evidence does not support the ALJ's explanation for discounting the opinion of Plaintiff's nurse practitioner, Collins. (Pl.'s Br. at 11.) The Court disagrees.

///

### A.    Applicable Law

As the parties acknowledge (*see* Pl.'s Br. at 11; Def.'s Br. at 2, 11-12), the new

regulations apply here because Plaintiff filed her application after March 27, 2017.[3] *See Woods v.*

*Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a

claimant's Social Security case if] she filed her claim on or after March 27, 2017," and that the

new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons

standard); *see also Petritz v. Kijakazi*, No. 22-35155, 2022 WL 17592191, at *1 (9th Cir. 2022)

(explaining that "the standard under the new regulations . . . [did] not apply to [the claimant's]

case because [he] filed his application for benefits before [March 27,] 2017" (citing *Woods*, 32

F.4th at 789)).

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when

evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'"

*Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)).[4] Supportability refers to "the extent

to which a medical source supports the medical opinion by explaining the 'relevant . . . objective

medical evidence,'" *id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)), and consistency refers

to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical

---

[3] The Ninth Circuit recently held that the new regulations are valid under the Social Security Act and Administrative Procedures Act. *See Cross v. O'Malley*, 89 F.4th 1211, 1215-17 (9th Cir. 2024).

[4] The ALJ correctly applied the new and parallel regulations applicable to SSI claims, which are codified at 20 C.F.R. § 416.920c. (*See* Tr. 19); *see also Reynolds v. Kijakazi*, No. 21-35672, 2022 WL 4095381, at *1 (9th Cir. Sept. 7, 2022) (applying the new regulations in evaluating claims for disability insurance benefits and SSI (citing 20 C.F.R. § 416.920c and *Woods*, 32 F.4th at 791-92)); *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *1 (9th Cir. Dec. 27, 2022) (noting that the new, parallel regulations for claims for disability insurance benefits and SSI are "codified at 20 C.F.R. [parts] 404 [and] 416," respectively (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017))).

sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [he] considered the supportability and consistency factors' in reaching [his] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's record." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding specialization or "other factors that tend to support or contradict a medical opinion[, such as the medical source's] familiarity with the other evidence in the claim or . . . understanding of . . . disability program[] policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(4)-(5).

If, however, an ALJ finds that medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he] considered the . . . factors in paragraphs (c)(3) through (c)(5)." *Id.* § 404.1520c(b)(3). Those factors are the medical source's relationship with the claimant, specialization, and facts that tend to support or contradict a medical source's opinion. *Id.* § 404.1520c(c)(3)-(5).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See* Woods, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial

evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

### B.    Analysis

Plaintiff fails to demonstrate that the ALJ committed harmful error in discounting Collins's opinion.

#### 1.    Collins's Opinion

Plaintiff established care with Collins on February 14, 2020. (*See* Tr. 285, 515, 530, noting that Plaintiff was "new to Dea [Collins]," "[t]here to reestablish" and "previously followed by Jill Celestskye"). Five months later, on July 8, 2020, Collins filled out a physical assessment regarding Plaintiff's impairments. (*Id.* at 513-14; *see also id.* at 525-29, July 8, 2020, Plaintiff presented for a follow-up visit and Collins filled out the questionnaire that Plaintiff provided).

In the physical assessment questionnaire, Collins reported that Plaintiff's diagnoses were degenerative disc disease, Plaintiff's associated symptoms would frequently interfere with her ability to maintain the attention and concentration necessary to perform simple work-related tasks, Plaintiff's medication side effects include hand tremors, and if Plaintiff worked full-time, she would need extra breaks to recline or lie down. (*Id.* at 513.) Collins also opined that (1) Plaintiff can sit for two hours and stand/walk for less than one hour during an eight-hour workday, (2) Plaintiff would need unscheduled work breaks, (3) Plaintiff can occasionally lift and carry ten pounds or less and never lift and carry twenty pounds or more, (4) Plaintiff cannot

perform fine manipulation, (5) Plaintiff can grasp, turn, and twist objects for no more than forty

percent of an eight-hour workday with her right hand, and no more than ten percent of an eight-

hour workday with her left hand, and (6) Plaintiff would miss work three or four times a month.

(*Id.* at 513-14.)

### 2.    The ALJ's Decision

The ALJ addressed Collins's physical assessment questionnaire near the end of his

decision. (*See id.* at 22, citing Exhibit B8F, i.e., Tr. 513-14.) The ALJ explained that Collins "did

not indicate [that] she had reviewed [Plaintiff's] records, and she failed to provide any

explanation for her opinions." (*Id.*) The ALJ further explained that he found "no support in the

evidence of record for some of the limits [Collins] outlined . . . , especially the limits regarding

the need for breaks and absenteeism, except for [Plaintiff's] subjective complaints." (*Id.*) Based

on these findings, the ALJ explained that "[o]verall, [he found] [Collins's] opinion to be

unpersuasive." (*Id.*)

### 3.    Disposition

Plaintiff fails to demonstrate that the ALJ committed harmful error in discounting

Collins's opinion.

As a threshold matter, Plaintiff argues that "the ALJ failed to articulate how his

consideration of the factors of supportability and consistency led him to reject restrictions

which . . . Collins assessed." (Pl.'s Br. at 12, citing Tr. 22.) Supportability refers to "the extent to

which a medical source supports the medical opinion by explaining the relevant objective

medical evidence." *Woods*, 32 F.4th at 791-92 (simplified). To that end, the ALJ noted that

Collins, who appears to have treated Plaintiff twice before completing a largely checkbox form

(*see* Tr. 513-20, 525-35, 551-54), "did not indicate [that] she had reviewed [Plaintiff's] records,

and she failed to provide any explanation for her opinions." (*Id.* at 22.)

It was appropriate for the ALJ to find Collins's opinion unpersuasive given that Collins provided little to no explanation in the largely checkbox form that she completed regarding Plaintiff's impairments. *See Kitchen v. Kijakazi*, 82 F.4th 732, 740-41 (9th Cir. 2023) (holding that substantial evidence supported the ALJ's explanation for discounting a medical opinion, and in support, noting that the Ninth Circuit has "accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation" (citing *Ford*, 950 F.3d at 1155)); *see also Tripodo v. Kijakazi*, No. 22-35781, 2023 WL 5973072, at *1 (9th Cir. Sept. 14, 2023) (applying the new regulations, holding that substantial evidence supported the ALJ's discounting of two medical sources' opinions, and noting that one medical source provided an opinion on absenteeism but "failed to provide any reason" in support of that opinion); *Jones*, 818 F. App'x at 782 (holding that the ALJ did not err in discounting the claimant's physicians' opinions, in part because they were "conclusory and provid[ed] little explanation"). Notably, the Commissioner cites *Kitchen* to support his argument that the ALJ appropriately discounted Collins's opinion because she "failed to provide any explanation for her opinions" (Def.'s Br. at 12-13, quoting Tr. 22), and in her reply, Plaintiff does not address *Kitchen*. (*See* Pl.'s Reply at 1-4.)

The ALJ also found Collins's opinion unpersuasive because certain work-preclusive limitations that she identified, such as Plaintiff's need to miss work three or four times a month and for unscheduled work breaks (*compare* Tr. 513-14, *with* Tr. 53-54, 72-73, 513-14, setting forth these opinions and relevant VE testimony), lacked support in the medical record and were based on Plaintiff's self-report, which, as discussed, the ALJ properly discounted. (*See id.* at 22, finding "no support in the evidence of record for some of the limits [Collins] outlined . . . ,

especially the limits regarding the need for breaks and absenteeism, except for [Plaintiff's] subjective complaints").

In addressing the supportability and consistency of Collins's opinion, the ALJ appropriately considered the extent to which Collins's opinion was based on Plaintiff's properly discounted self-reports and lacked support in the medical record. Indeed, in *Schlabs v. Kijakazi*, No. 22-35287, 2023 WL 2009927, at *1-2 (9th Cir. Feb. 15, 2023), the Ninth Circuit applied the new regulations and held that substantial evidence supported the ALJ's discounting of the claimant's psychiatrist's opinion. *Id.* In so holding, and after finding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony, the Ninth Circuit explained that "[t]he ALJ found unpersuasive [a] portion of the psychiatrist's opinion . . . because it was inconsistent with the full medical record, was inconsistent with the state psychological consultants' opinions, and was largely based on [the claimant's] subjective statements." *Id.* Similarly here, the ALJ found that Collins's opinions regarding, among other things, absenteeism and Plaintiff's need for unscheduled work breaks lacked support in the medical record and appeared to be based on Plaintiff's properly discounted self-reports. (*See* Tr. 22.) Immediately prior to the ALJ's analysis, he found persuasive the state agency medical consultants' conflicting opinions. (*Id.* at 21.)

On this record, the Court finds that substantial evidence supports the ALJ's discounting of Collins's opinion, in part because Collins relied on Plaintiff's properly discounted self-reports. *See Reynolds v. Kijakazi*, No. 21-35672, 2022 WL 4095381, at *2 (9th Cir. Sept. 7, 2022) ("The ALJ addressed the supportability and consistency of these opinions, concluding that parts were 'vague,' included 'subjective complaints from the claimant not included in the [physician's]

examination notes or supported by findings,' and lacked support from other objective record evidence.").

Finally, the Court notes that in challenging the ALJ's discounting of Collins's opinion, Plaintiff focuses primarily on Collins's opinion that Plaintiff can grasp, turn, and twist objects for no more than forty percent of an eight-hour workday with her right hand, and no more than ten percent of an eight-hour workday with her left hand. (*See* Pl.'s Br. at 12, arguing that the portion of the ALJ's decision addressing Collins's opinion "does not mention" Collins's opinion about "Plaintiff's ability to use her right, dominant hand for grasping, turning, and twisting objects" and proper consideration of the "factors of supportability and consistency . . . lead to an inescapable conclusion that [Collins's] restrictions in grasping, turning, and twisting . . . are persuasive"; Pl.'s Reply at 4, emphasizing that "the ALJ's decision contained no supportability or consistency analysis addressing the assessment of the restriction in Plaintiff's use of the hands for grasping, turning, and twisting; *see also* Tr. 513, describing Collins's opinion on grasping, turning, and twisting objects).

Contrary to Collins's opinion, the state agency medical consultants reviewed Plaintiff's records and Collins's opinion and determined that Plaintiff did not suffer from any manipulative limitations. (*See, e.g.*, Tr. 101-03, setting forth Ramona Bates, M.D's opinion dated February 3, 2021 and summary of certain medical records and Collins's opinion). The ALJ found the state agency medical consultants' opinions to be persuasive (*see* Tr. 21), and Plaintiff does not challenge the ALJ's decision on this ground. Furthermore, the ALJ's findings regarding Collins's insufficient explanations and reliance on Plaintiff's properly discounted self-reports lend additional support to the ALJ's determination that the state agency medical consultants' opinions are more persuasive than Collins's opinion.

PAGE 24 – OPINION AND ORDER

In short, the Court concludes that Plaintiff failed to demonstrate that the ALJ committed harmful error in discounting Collins's opinion, and that substantial evidence supports the ALJ's evaluation of Collins's opinion. *See Kitchen*, 82 F.4th at 740 ("Under the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence'" (quoting *Woods*, 32 F.4th at 792)).

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 6th day of February, 2024.

HON. STACIE F. BECKERMAN
United States Magistrate Judge